## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL THOMAS PULASKI** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-2021** |
| **STANDARD INSURANCE COMPANY** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is

**GRANTED.** (Document #25), and plaintiff's motion for summary judgment is **DENIED**.

(Document #74).

### I.  BACKGROUND

Defendant, Standard Insurance Company ("Standard"), issued to Pulaski, Gieger &

Laborde, A Professional Law Corporation, Group Long Term Disability Insurance Policy

Number 612008-A (the "Policy"), which became effective in May 1992.  The Policy provided

long term disability benefits for eligible employees if they lost income due to a disability that

prevented them from practicing law in their specialties.  Plaintiff, Michael Thomas Pulaski

("Pulaski"), who practiced law as a trial attorney at Pulaski, Gieger & Laborde, was diagnosed

with prostate cancer in 1998.  Although Pulaski was no longer able to work as a trial attorney, he

continued to work as an attorney in an office/counseling role.

In August 2001, Pulaski filed a claim for long term disability benefits under the Policy averring that, because of his illness, he was no longer able to practice in his specialty as a trial attorney. Standard initially concluded that Pulaski was disabled from working in his own occupation and approved his claim, but later determined that the records did not support Pulaski's claim and denied benefits.

On appeal, through administrative channels, Standard reversed its decision. Standard calculated Pulaski's benefits by reducing the full benefits by the amount he continued to earn outside his own specialty. Pulaski's suit claims that Standard improperly, arbitrarily, and capriciously denied him the full benefits owed under the Policy.

The parties have filed cross motions for summary judgment. Standard contends that, based on the plain language of the Policy, it accurately calculated Pulaski's benefits. Pulaski alleges that he should receive maximum monthly benefits under the Policy with no offset for income earned outside his specialty as a trial attorney.

## II.  DISCUSSION

The Policy is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and therefore, federal common law pertaining to the construction of contracts is applicable. *Transnational Learning Cmty. at Galveston, Inc. v. United States Office of Personnel Mgmt.,* 220 F.3d 427, 431 (5th Cir. 2000). In construing insurance plans, the court interprets the contract language "in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its

generally accepted meaning if there is one." *Id.* (internal quotations and citations omitted).

Further, a contract should be interpreted to give meaning to all of its terms, with the notion that

all of the provisions were intended to accomplish some purpose and that none are to be deemed

superfluous. *Id.* The court is to apply the rule of *contra proferentem* and construe the terms of

the policy strictly in favor of the insured only if the terms remain ambiguous after applying the

ordinary principles of contract interpretation. *Id.*

When reviewing determinations of an ERISA insurance plan administrator, the standard

of review is one of abuse of discretion. *Vega v. National Life Ins. Servs.,* 188 F.3d 287, 295 (5th

Cir. 1999). The issue before the court is whether Standard abused its discretion when it

determined that Pulaski's earnings as an attorney in an office/counseling role should be deducted

from the benefits payable to him under the Policy.

The parties agree that Pulaski is disabled from practicing in his "own occupation," which

is the specialty of being a trial attorney. Pulaski argues that, having met the "Own Occupation

Definition of Disability," there is no provision in the Policy that permits Standard to offset the

earnings he makes from "another occupation." (Document #40 at 6-7). In support of this

contention, Pulaski cites the Policy provision that defines the categories of disability, which

states: "If you are disabled from your Own Occupation, there is no limit on your Work Earnings

in another occupation." *Id.* According to Pulaski, "[i]f no limit on work earnings exists in

another occupation when an insured is disabled in his own occupation, then work earnings from

that other occupation cannot under the language of the policy constitute a valid basis for

reducing disability benefits." *Id.* Standard contends that the amount of monthly benefits due

3

under the total disability portion of the policy should be offset by any income which Pulaski

earns, even outside the specialty of his occupation.

There are three definitions of disability in the "Definition of Disability" provision of the

Policy.  The "Own Occupation Definition of Disability" requires that an insured be disabled

from his own occupation; the "Any Occupation Definition of Disability" requires that an insured

be disabled from all occupations; and the "Partial Disability Definition" requires that an insured

be unable to earn a certain income level if he is working in his own occupation while disabled.

This provision also provides:  "You may work in another occupation while you meet the Own

Occupation Definition of Disability.  If you are Disabled from your own occupation, there is no

limit on your Work Earnings in another occupation.  Your Work Earnings may be Deductible

Income.  **See Return to Work Incentive and Deductible Income.**"  "Work Earnings" is

defined as "your gross monthly earnings from work you perform while disabled, including

earnings from your employer, any other employer or self-employment."

The "Return to Work Incentive" provision of the Policy defines "Work Earnings" as

"your gross monthly earnings from work you perform while Disabled, including earnings from

your Employer, any other employer, or self-employment."  Under the "Deductible Income"

provision, the policy defines deductible income as "(1) Your work earnings, as described in the

Return to Work Incentive."  In addition, under the "Exceptions to Deductible Income" provision,

the policy makes no reference to excluding income made from another occupation when the

insured is considered disabled under the "own occupation" disability provision of the policy.

Moreover, under the "Rules for Deductible Income," an insured has a duty to pursue deductible

4

income without any limitation placed on the type of disability.

Contrary to Pulaski's contention, the Policy does not provide that there is no limitation on an insured's benefits if he meets the "Own Definition of Disability."  The sentence providing that "there is no limit on your Work Earnings in another occupation," is taken out of context when read without the remainder of the paragraph, which provides:  "Your Work Earnings may be Deductible Income.  See Return To Work Incentive and Deductible Income."  This portion of the Policy indicates that Standard may offset the earnings made from "another occupation," and refers the insured to the "Return to Work Incentive and Deductible Income" provisions of the Policy to determine if certain income will be deductible.  The "Return to Work Incentive" provision clearly defines work earnings to include "earnings from your Employer, other employer, or self-employment."

Pulaski also argues that, under the partial benefit offset provided for in the "Return to Work Incentive" provision, only individuals who are partially disabled and return to their own occupation will have a portion of their "Work Earnings" deducted from the disability benefit.  *Id.* Pulaski contends that, because he has not returned to his own occupation, his benefits should not be reduced by the amount he earns outside of his specialty.  In addition, Pulaski argues that his interpretation of the Policy is supported because an individual is not eligible for coverage until the "Active Work Provisions" have been satisfied.  *Id.*  "Active Work" is defined as "performing the Material Duties of your Own Occupation at your Employer's usual place of business."  *Id.* According to Pulaski,

[p]redisability earnings are limited to "your earnings in effect on your last day of

5

Active Work," again limiting coverage to "Own Occupation" earnings.  In each case, "work" relates to the insured's "Own Occupation," and coverage applies once, and to the extent, the insured is "active" in his "Own Occupation."  These policy terms establish that "Work Earnings" must be earnings in the insured's "Own Occupation."

*Id.* at 7-8.

The "Return to Work Incentive" provision of the Policy clearly outlines the procedure for the deduction of "Work Earnings."  The only reference to "Partial Disability" in the provision is that it provides:  "You may serve your Benefit Waiting Period while working, if you meet ***either*** the Own Occupation Definition ***or*** the Partial Disability Definition." (emphasis added).  Nothing in that sentence supports Pulaski's contention that the provision applies only to partially disabled individuals.  Further, nothing in the "Active Work Provisions" supports Pulaski's argument that deductible earnings must be earnings from the insured's "Own Occupation."  That portion of the Policy simply provides the benchmark for determining when an individual has become an eligible member and is covered under the Policy.

Interpreting the Policy's language in light of its ordinary meaning, and in a way as to give meaning to all of its terms, the court concludes that the Policy is not ambiguous and Standard did not abuse its discretion when it determined that Pulaski's earnings as an attorney in an office/counseling role should be deducted from the benefits payable to him.  Reading all of the provisions of the Policy together, Pulaski's long term disability benefits under the Policy are subject to a reduction by the income he earns as an office/consulting lawyer.[1]

---

[1]Policies reducing disability benefits by the amount of other income earned is not unusual.  *See House v. American United Life Ins. Co.,* 2003 WL 21243502 at *3 (E.D. La. May 23, 2003) (citing a number of cases in which the court concluded that disability benefits may be

### III.  CONCLUSION

The motion for summary judgment of Standard Insurance Company is **GRANTED.**  The motion for summary judgment of Michael Thomas Pulaski is **DENIED**.  It is **ORDERED** that the parties bear their own costs and attorney's fees.[2]


New Orleans, Louisiana, this __31___ day of August, 2006.


_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

reduced to reflect the receipt of other income).

    [2]Because the court has disposed of this matter based on the parties' cross motions for summary judgment, Standard's pending motion *in limine* is moot. (Document #87).